## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

SUPERIOR COURT
NOS. 0779CR00561
0779CR00567

COMMONWEALTH

v.

VICENTE GONZALEZ

HAMPDEN COUNTY
SUPERIOR COURT
FILED

JAN 14 2026

### DEFENDANT'S MOTION TO VACATE HIS GUILTY PLEAS PURSUANT TO MASS. R. CRIM. P. 30(b) AND MEMORANDUM IN SUPPORT

Now comes the defendant, Vicente Gonzalez, by and through undersigned counsel, and respectfully moves this Honorable Court to vacate his guilty pleas on Dockets 0779CR00561 and 0779CR00567 pursuant to Mass.R.Crim.P. 30(b). As reasons therefore, Gonzalez asserts that justice may not have been done where he entered into a global plea agreement that resolved three (3) cases, however, the leading case (Docket 0779CR00379) was later dismissed with prejudice due to egregious government misconduct by Sonja Farak.

Gonzalez further requests a hearing on this motion and, in the event this Court declines to grant a new trial solely on the memorandum and documents submitted in support, an evidentiary hearing pursuant to Mass.R.Crim.P. 30(c)(3).

In support of this motion, Santiago respectfully refers this Court to the Affidavit of Plea Counsel Frank Fernandez (Exhibit 1), Affidavit of Vicente Gonzalez (Exhibit 2), relevant police reports (Exhibits 3 and 4), and pleadings (Exhibits 6 and 7).

## RELEVANT BACKGROUND

Gonzalez was first indicted on Docket 0779CR00379 on March 22, 2007 for:

*Count 1:* Trafficking in Cocaine (28-100 grams) in violation of G.L. c. 94C, §32E(b)
*Count 2:* Drug Violation Near School/Park in violation of G.L. c. 94C, §32J
*Count 3:* Distribution of Heroin in violation of G.L. c. 94C, §32(a)
*Count 4:* Distribution of Cocaine in violation of G.L. c. 94C, §32A(c)
*Count 5:* Drug Violation Near School/Park in violation of G.L. c. 94C, §32J

Thereafter, on April 30, 2007, Gonzalez was indicted on Docket 0779CR00561 for Trafficking in Cocaine (14-28 grams) in violation of G.L. c. 94C, §32E(b); and Docket 0779CR00567 for Trafficking in Cocaine (14-28 grams) in violation of G.L. c. 94C, §32E(b) and Drug Violation Near School/Park in violation of G.L. c. 94C, §32J.

### Docket 0779CR00379 – October 25, 2006 and February 12, 2007 *(Dismissed charges)*

The following is based on the findings by this Court (Kinder, J.) in its Memorandum of Decision denying the defendants' motions to suppress (Doc. 11, Exhibit 5):

In October 2006, based on information provided by a confidential informant, Holyoke Narcotics Unit and a federal gang task force began an investigation into Gonzalez and co-defendant, David Sanchez ("Sanchez") for distribution of narcotics. The informant made two (2) undercover purchases that form the basis of the indictments on Docket 0779CR0379.

The informant had arranged to introduce Anthony Brack ("Brack"), an undercover Holyoke police officer, to Sanchez and Gonzalez on October 25, 2006. The meeting was observed from a surveillance location and Brack was wearing a concealed radio transmitter that was being overheard by Holyoke police Detective Paul Barkyoumb ("Barkyoumb"). At the meeting with Sanchez and Gonzalez, Brack purchased $60 worth of heroin and cocaine.

At the direction of Brack, the informant contacted Gonzalez on February 12, 2007 by telephone to purchase 2.5 kilograms of cocaine. The telephones conversations between the

2

informant and Gonzalez were overhead by Barkyoumb. Gonzalez told the informant that Sanchez would handle the meeting because Gonzalez was being watched by police. Another co-defendant, Felix Vega ("Vega") arrived for the meeting with the informant and was arrested by police with 72 ounces of cocaine. Vega was not familiar to the police from their five (5) month investigation.

**Docket 0779CR00561 – November 2, 2006**

The following comes from the police report produced by the Commonwealth. (Exhibit 3).

On November 2, 2006, an informant arranged for the purchase of a half an ounce of cocaine from Gonzalez and Sanchez through secretly recorded telephone calls. Barkyoumb, as well as federal officers, set up physical surveillance of the area where the informant met with Gonzalez, Sanchez, and another individual inside a vehicle. The transaction was recorded using a concealed body worn recorder and transmitter on the informant.

**Docket 0779CR00567 – November 21, 2006**

The following comes from the police report produced by the Commonwealth. (Exhibit 4).

On November 21, 2006, an informant again arranged for the purchase of one (1) ounce of cocaine from Gonzalez through secretly recorded phone calls. The informant met Gonzalez inside a building where the transaction was secretly recorded using a concealed body worn recorder and transmitter on the informant.

**Motions to Suppress**

On September 10, 2007, on Docket 0379, Gonzalez filed a motion to suppress evidence challenging the warrantless search of a co-Defendant and the eavesdropping by police of conversations between the confidential informant and Gonzalez. This Court (Kinder, J.) held an evidentiary hearing on January 2, 2008 and thereafter denied the motion on January 4, 2008. (Exhibit 5).

3

On January 29, 2008, on Dockets 0561 and 0567, Gonzalez filed a motion to suppress evidence challenging the secretly recorded in-person communications with Gonzalez. (Exhibit 6). The Court (Rup, J.) held a hearing on June 5, 2008, and continued the hearing to July 24, 2008.

**Negotiated Global Plea and Sentencing**

The scheduled continuation of the evidentiary hearing was not held. The parties negotiated a global plea agreement of the three (3) cases with an agreed upon sentencing recommendation – the most serious being *Count 1* of Docket 0379 and all other sentences running concurrent to 0379. See Exhibit 1, Affidavit of plea counsel. Without a decision on his motion to suppress and waiving any appellate rights on the issue, Gonzalez pleaded guilty on July 31, 2008. The Court accepted the plea and subsequently sentenced Gonzalez on all three (3) cases on September 3, 2008 as follows:

0779CR00379:
   *Count 1:* Reduced to Possession of Cocaine with Intent to Distribute
        Sentence: 5-7 years incarceration
   *Count 2:* Nolle prosequi
   *Count 3:* Distribution of Class A Drug
        Sentence: 3-5 years concurrent with *Count 1*
   *Count 4:* Reduced to Distribution of Cocaine
        Sentence: 3-5 years concurrent with *Count 1*
   *Count 5:* Nolle prosequi

0779CR00561
   *Count 1:* Reduced to Possession of Cocaine with Intent to Distribute
        Sentence: 3-5 years concurrent with 0379

0779CR00567
   *Count 1:* Reduced to Possession of Cocaine with Intent to Distribute
        Sentence: 3-5 years concurrent with 0379
   *Count 2:* Nolle prosequi

**Dismissal of the most serious case - 0779CR00379**

On April 5, 2018, *Count 1* was vacated and dismissed with prejudice pursuant to *CPCS v. Attorney General*, 480 Mass. 700, 725-729 (2018) (dismissal with appropriate remedy for

4

egregious government misconduct). Sonja Farak was the chemist for the drugs underlying *Count 1* of 0379 – the most serious offense.

Thereafter, on February 24, 2020, Gonzalez filed an *Assented to Motion to Vacate and Dismiss With Prejudice Count 2 and Count 4 Nunc Pro Tunc to April 5, 2018*. According to the motion, due to an issue with the Commonwealth's case management system, *Count 3* and *Count 4* were inadvertently excluded from the original list of cases that were handled by Sonja Farak. The Commonwealth assented to the motion to dismiss and the Court (Carey, J.) allowed it on March 2, 2020.

According to the Commonwealth, the DEA maintained custody of the drugs that were purchased by the informant on November 2, 2006 and November 21, 2006. Those drugs were not sent to the Amherst Drug Lab and therefore those charges have not been dismissed pursuant to the SJC order.

## ARGUMENT

To satisfy due process, a guilty plea may only be accepted where "the contemporaneous record contains an affirmative showing that the defendant's plea was intelligently and voluntarily made." *Commonwealth v. Furr,* 454 Mass. 101, 106, 907 (2009) (citations omitted). A guilty plea is intelligent if it is tendered with knowledge of the elements of the charges against the defendant and the procedural protections waived by entry of a guilty plea. *Commonwealth v. Duest,* 30 Mass.App.Ct. 623, 630–631 (1991). A guilty plea is voluntary so long as it is tendered free from coercion, duress, or improper inducements. *Id.* at 631. A defendant's guilty plea, however, "may be vacated as involuntary because of external circumstances or information that later comes to light." *Commonwealth v. Scott,* 467 Mass. 336, 345 (2009).

A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R.Crim. P. 30(b). *Commonwealth v. Furr*, 454 Mass. 101, 106 (2009). Pursuant to Mass. R.Crim. P. 30(b), a judge may grant a motion for a new trial any time it appears that justice may not have been done. *Commonwealth v. Cotto*, 471 Mass. 97, 105 (2015). Here, Gonzalez global plea was not knowing and intelligent due to the undisclosed egregious government misconduct that occurred in the most serious of his cases rendering his global plea involuntary and in violation of his rights to due process. *Ferrara v. United States*, 456 F.3d 278, 290 (2006).

Where a defendant claims that a guilty plea was induced by government misconduct, they must demonstrate that (1) "egregiously impermissible conduct...by government agents...antedated the entry of his plea," and (2) "the misconduct influenced [the defendant's] decision to plead guilty or, put another way, that it was material to that choice." *Commonwealth v. Scott*, 467 Mass. 336, 346 (2014), quoting *Ferrara v. United States*, 456 F.3d 278, 290 (2006).

I. **In this case, the conclusive presumption of government misconduct should apply to all drug crimes combined in the plea agreement.**

In cases that were affected by the Dookhan and Farak scandals, defendants are entitled to a conclusive presumption that egregious government misconduct occurred in their case if certain factors are met – alleviating them of the evidentiary burden to establish the first prong of the *Ferrara-Scott* framework. *Commonwealth v. Henry*, 488 Mass. 484, 491 (2021); *CPCS v. Attorney General*, 480 Mass. 700, 725-729 (2018); *Commonwealth v. Scott*, 467 Mass. at 352. Relevant here, Gonzalez was entitled to the conclusive presumption on Docket 0779CR0379 where Farak signed the drug certificates.

As for Dockets 0779CR0561 and 0779CR0567, because the drug certificates were not signed by Farak, the Commonwealth is likely going to argue that *Commonwealth v. Henry*, 488

6

Mass. 484 (2021) is controlling and supports upholding Gonzalez' pleas on those dockets. *Henry* is distinguishable.

*Henry*, relying on *Bridgeman II*, clarified the holding in *Scott* as it pertains to associated nondrug offenses: "[w]here a plea agreement or trial involved multiple charges, some drug-related and others not, the conclusive presumption of government misconduct set forth in *Scott* applies only to the tainted drug convictions." 488 Mass. at 492, quoting *Bridgeman II*, 476 Mass. at 328. Both *Bridgeman II* and *Henry*, however, dealt with **nondrug** offenses thus the court did not consider whether related drug convictions should be entitled to a conclusive presumption of government misconduct.

*Bridgeman II* and *Henry* are also distinguishable in that the misconduct at issue was limited to the chemist – not a prosecutor or investigator. *CPCS,* 480 Mass. at 724, citing *Commonwealth v. Bridgeman*, 476 Mass. 298, 322-323 (2017) ("Bridgeman II"). Here, the misconduct "poison[s] the entire investigation" because it was accompanied by the prosecutors' intentional and egregious misconduct. *CPCS,* 480 Mass. at 724-726. So egregious that the SJC recognized a need for the drastic remedy of dismissal with prejudice. *Id.* at 725.

Given these significant differences, *Henry* does not control the outcome in this case. Unlike here, what is missing in *Henry* and *Bridgeman II* is a sufficient nexus between the misconduct and the defendant's case. Here, there is a nexus between the misconduct and Gonzalez' cases via (1) the global plea agreement; (2) the relatedness of the indictments – they are all drug related and stemmed from the same joint investigation and same confidential informant; and, (3) the egregious and intentional misconduct of the prosecution permeated the entire investigation – it was not limited to just the chemist. It is the defendant's position that there is a sufficient nexus and he should be entitled to a conclusive presumption of egregious government misconduct in each of the

7

drug convictions that were part of his global plea agreement and stemmed from the same investigation into the same conduct of the defendant.

In any event, whether the conclusive presumption applies to related drug offenses in Farak cases or not, *Henry* does not foreclose the relief requested here. Rather, "[a] defendant seeking to withdraw a guilty plea to nondrug charges that were combined with tainted drug charges in a single plea agreement, on the asserted ground of government misconduct, therefore must establish both prongs of the *Ferrara-Scott* test." *Henry,* 488 Mass. at 492. Gonzalez can establish both prongs.

**II.    Even if the conclusive presumption only applies to tainted drug crimes, Gonzalez' plea was not knowing and intelligent where he can show egregious government misconduct influenced his decision to plead guilty.**

Under the first prong of the *Ferrara-Scott* analysis, Gonzalez must show (1) egregious misconduct; (2) by the government; (3) in his case. *Scott,* 467 Mass. at 348-354. Under the second prong, Gonzalez must show "a reasonable probability that he would not have pleaded guilty had he known of [the] misconduct." *Id.* at 354-355.

### Prong 1: Egregious government misconduct in the defendant's case

There is no question that there was egregious government misconduct by the government, however, the issue here is whether the egregious government misconduct occurred "in the defendant's case" as it pertains to dockets 0779CR0561 and 0567. Put another way, Gonzalez must establish "a nexus between the government misconduct and the defendant's own case." *Id.* at 351.

Gonzalez was only charged with drug related crimes. The tainted drug certificates from the most serious charges may have undermined the entire foundation of the Commonwealth's case against Gonzalez where the undercover buys all stemmed from the same investigation and same

confidential informant. Even if the offenses were not joined[1] for trial, if known to the jury, the government misconduct in Gonzalez' case would strike at the integrity of the prosecution as a whole. For the same reasons argued *supra* as to why there is a sufficient nexus between the misconduct and Gonzalez' cases, Gonzalez meets the first prong of the *Ferrara-Scott* analysis.

Moreover, any remedy other than allowing Gonzalez to withdraw his guilty pleas would be inconsistent with SJC's approach in trying to remedy the harm caused by the drug lab scandals and restoring confidence in our criminal justice system. Considering the due process rights of defendants and the lapse of systemic magnitude, the SJC found it "most appropriate that the benefit of [the] remedy inure defendants." *Scott,* 467 Mass. at 352. Because the dismissed case is the one that drove Gonzalez decision to plead guilty to all three related cases, he should be given the benefit – not the burden of the systematic lapse.

### *Prong 2: The misconduct was material to the defendant's decision to plead guilty.*

The required showing that the misconduct was material to the decision to plead guilty is inherently case specific. *Commonwealth v. Crump,* 105 Mass.App.Ct. 307, 312 (2025). Thus, "[t]he reasonable probability analysis must be based on the actual facts and circumstances surrounding the defendant's decision at the time of the guilty plea in light of the one hypothetical question of what the defendant reasonably may have done if he had known of [the governmental] misconduct." *Scott,* 467 Mass. at 357. Gonzalez can sufficiently show a reasonable probability that he would not have pleaded guilty had he known of the misconduct.

In *Henry,* the defendant pleaded guilty to multiple indictments in a global resolution. 488 Mass. at 493 . The most serious offenses, however, were violent crimes and firearm offenses – not

---

[1] While the dockets do not reflect any motion for joinder of the three (3) cases, they were all scheduled for trial for the same date.

the tainted drug offense. *Id.* While "the defendant's plea was motivated, in part, by the favorable terms of the over-all plea arrangement… the defendant faced 'substantially greater sentences on violent crimes – an armed robbery, [an] assault and battery [by means of] a dangerous weapon, and then a series of firearm[] offenses' – than the three-year sentence he received." *Id.* at 493. As such, the hearing judge specifically rejected the defendant's testimony that the drug offenses "drove his decision to plead guilty." *Id.* at 489. Moreover, the defendant's asserted defense to the firearm charges – that it was found in his girlfriend's apartment yet his fingerprint was on the box of ammunition – was unpersuasive. *Id.* at 493.

Here, the tainted drug charges were not just a minor component of the overall plea deal – they were central to the package plea deal. In 2007, Trafficking in Cocaine 28-100 grams (*Count 1* of Docket 0779CR0379) carried a mandatory minimum sentence of 5 years and maximum 20 years. Mass. Gen. Laws Ann. c. 94C, § 32E (West) (effective through November 3, 2010). Pursuant to the plea agreement, the charge was reduced to Possession of Cocaine with Intent to Distribute which does not carry a mandatory minimum sentence and has a maximum penalty of 10 years. Mass. Gen. Laws Ann. c. 94C, § 32A (West) (effective through November 3, 2010). Gonzalez was sentenced to 5 to 7 years of incarceration on *Count 1*. For all other counts that carried an incarcerated sentence, Gonzalez was sentenced to 3 to 5 years concurrent to *Count 1* of Docket 0779CR00379. See *Commonwealth v. Williams*, 89 Mass.App.Ct. 383, 389 (2016) (punishment imposed subordinate to more serious offense indicates that more serious offense was driving force behind the plea). Nonetheless, while Gonzalez avoided a mandatory minimum, "the disposition that [he] received was not so favorable that the benefits of the plea outweighed the value of the [misconduct] evidence." *Commonwealth v. Hallinan*, 491 Mass. 730, 751 (2023).

This is supported by Gonzalez' plea counsel. As plea counsel stated in his affidavit, "the plea negotiations and []advice to resolve all three matters were mainly driven by the lead case 0379, its potential penalties and the denial of the motion to suppress in that matter. The viability of the evidence, include the drug certificates, were all taken into consideration and formed the basis for [his] advice to resolve the matters through a plea." *See* Exhibit 1 at ¶8.

Gonzalez' decision to stop pursuing his motion to suppress is also significant because Gonzalez likely would have succeeded in suppressing the recordings of the confidential purchases. Each of the confidential purchases by the informant were secretly recorded without a warrant. It is well settled that consent of one party to a conversation to the transmission and recording does not obviate the need for a warrant. *Commonwealth v. Blood*, 400 Mass. 61, 76-77 (1987). Such warrantless electronic search by surreptitious transmission and recording is illegal and must be suppressed. *Id.* at 77. This is so even where federal law enforcement is involved in a joint investigation with the state where it is essentially a state investigation to bring state charges. *Commonwealth v. Perry*, 489 Mass. 436, 443 n.9 (2022); *Commonwealth v. Brown*, 456 Mass. 708, 713 (2010). Such an understanding was also explicitly stated in the Memorandum of Understanding of the Western Massachusetts Gang Task Force[2]: "in situations where the statutory common law of Massachusetts is more restrictive than comparable Federal law, the investigative methods employed by state and local law enforcement agencies shall conform to the requirements of such statutory or common law pending a decision as to venue for prosecution. *See* Exhibit 6, Memorandum of Understanding at ¶ IV(B).

---

[2] The Western Massachusetts Gang Task Force was a joint cooperative effort between the FBI, Massachusetts State Police, Chicopee police, Holyoke police, Springfield police, West Springfield police, and Hampden County Sheriff Office. *See* Exhibit 6, Memorandum of Understanding at ¶¶ I, III(B), ).

11

Thus, the motion to suppress the recordings had enough likelihood of success in this specific case that "a reasonable person in the defendant's position would have pursued the motion to suppress rather than agree to the plea" had the defendant knew of the misconduct. *Crump*, 105 Mass. at 314 (citations omitted). According to plea counsel, had he known of the misconduct of Farak, it would have "altered [his] advice to Mr. Gonzalez [and he] would not have entered a global plea resolution and would have advised Mr. Gonzalez to proceed with the pending motions to suppress on his other matters." Exhibit 1 at ¶6. Instead, Gonzalez forfeited his meritorious pending motion to suppress on Dockets 0779CR0561 and 0567 to secure a reduction in charge and more lenient sentence on *Count 1* of Docket 0779CR00379.

The egregious misconduct certainly affected Gonzalez' ability to weigh the Commonwealth's evidence when deciding to negotiate an over-all plea arrangement and abandon his motion to suppress and a trial. Surely, had Gonzales known about the egregious government misconduct in the case driving the plea arrangement, there is more than a reasonable probability he would not have pleaded guilty. At the very least, Gonzalez certainly would have sought a substantial reduction in the plea-bargained sentence as a condition of forgoing his motion to suppress and trial. Accordingly, his decision to plead guilty was not knowing and intelligent and this Court should vacate his convictions on Dockets 0779CR0561 and 0779CR0567.

## CONCLUSION

For the reasons stated, this Court should hold an evidentiary hearing on Gonzalez' within motion and allow him to withdraw his guilty pleas on Dockets 0779CR0561 and 0779CR0567.

12

Respectfully submitted,
VICENTE GONZALEZ,
By and through counsel,

Ashley P. Allen
BBO # 697825
Law Office of A.P. Allen
19 Hemlock Road
Boxford, MA 01921
(617) 925-7888
AshleyAllenLegal@gmail.com

DATED:  January 7, 2026

## CERTIFICATE OF SERVICE

I, Ashley P. Allen, do hereby certify that I have served a copy of the foregoing via electronic mail to Assistant District Attorney John Wendel Hampden County District Attorney's Office, 50 State Steet Springfield, MA 01102 this 7th day of January, 2026.

Ashley P. Allen

13

CLERKS OFFICE
SUPERIOR COURT
HAMPDEN COUNTY

2026 JAN 14  A 11: 43